UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC NORTHWEST EB-5 REGIONAL CENTER INC et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>Defendants. | CASE NO. 2:26-cv-01237-JNW<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

Plaintiffs ask for an emergency temporary restraining order ("TRO") while their motion for a preliminary injunction is pending. Dkt. No. 20. Plaintiffs have not shown that they will suffer irreparable harm before the Court can decide that motion, so the TRO motion is DENIED.

## 2. BACKGROUND

The EB-5 program offers visas to immigrants who invest a designated amount of money into new commercial enterprises ("NCE"), if that investment will create at least 10 jobs for United States workers. Dkt. No. 1 ¶¶ 58, 61. If

immigrants instead invest in a "targeted employment area" ("TEA") based on high unemployment rates, the investment amount required for an EB-5 visa is lower. *Id.* ¶¶ 61–62.

Plaintiff Pacific Northwest EB-5 Regional Center ("PNWERC") is a Washington-based nonprofit that United States Citizenship and Immigration Services ("USCIS") designated as a regional center, an entity organized for the promotion of economic growth and job creation. *Id.* ¶¶ 63–65. As a regional center, PNWERC recruits foreign investors and invests their capital into NCEs, which are then used to sponsor EB-5 job creating entities ("JCE") consisting of environmentally compliant trucks operating within Washington, Oregon, Idaho, Montana, and California. *Id.* ¶¶ 66, 91, 98. The truck drivers become members of the NCEs associated with PNWERC, the various Green Truck Limited Partnership Plaintiffs ("Green Trucks"). *Id.* ¶¶ 27–29, 46–54.

Between 2014 and 2024, USCIS approved 70 individual EB-5 visa petitions based on PWNERC's investments into the Green Trucks because, while the trucks conduct business outside of the TEA, the PNWERC and associated NCEs are headquartered in a TEA. *Id.* ¶¶ 98, 102. Plaintiffs assert USCIS also repeatedly determined Plaintiffs' "reasonable methodology" for calculating revenue satisfied regulatory requirements. *Id.* ¶ 104. In 2024, Plaintiffs claim USCIS abruptly switched course, expressing a "new technical rule" in a single investor visa petition that Plaintiffs' methodology no longer qualified and that the JCEs or truck drivers themselves must principally conduct business within a TEA. *Id.* ¶¶ 106–07, 114–15.

Plaintiffs call this the "Challenged Rule," and moved for a preliminary injunction on April 21, 2026, seeking to prohibit the Government from "rejecting or denying Plaintiffs' pending and future filings on the ground that revenue generated by Plaintiffs' long-haul trucking job-creating entities (JCE) may be counted only if earned within the limited geographic boundaries of the designated [TEA]." Dkt. No. 6 at 5. The Government moved to dismiss in June. Dkt. No. 12. Both motions are pending.

On November 6, USCIS denied a Form I-829 petition filed by an investor in one of Plaintiffs' projects. Dkt. No. 20 at 4. That denial allows USCIS to place the investor in removal proceedings. Forty-four more I-829 petitions tied to Plaintiffs' projects remain pending. *Id.* Plaintiffs now ask the Court to bar USCIS from adversely adjudicating filings associated with their projects "on the ground that fleet-member/job-creating-entity (JCE) trucking revenues cannot support indirect-job calculations because those revenues were generated outside a designated TEA." *Id.* at 2. The Government opposes the motion.[1]

## 3. DISCUSSION

A TRO, like a preliminary injunction, is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "[P]laintiff[s] seeking a [TRO] must make a clear showing that '[they are] likely to succeed on the merits,

[1] The Government's response was due within forty-eight hours of service, LCR 65(b)(5), but it was filed two days late. The Court has considered it, though the result would be the same without it.

that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). Plaintiffs invoke the Ninth Circuit's "serious questions" test, Dkt. No. 20 at 5, but that test relaxes only the merits showing. A movant must still show that irreparable harm is likely. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32, 1135 (9th Cir. 2011). The threatened harm must be immediate, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988), and there must be a "sufficient causal connection" between that harm and the conduct the movant asks the Court to enjoin, *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011).

Because Plaintiffs' preliminary-injunction motion is already pending, the question here is narrow: will Plaintiffs suffer irreparable harm before the Court can rule on that motion? They have not shown that they will, for two reasons.

First, Plaintiffs' argue "[t]he additional forty-four pending petitions provide an identified set of matters in which the same restriction can cause further injury before the Court rules," Dkt. No. 20 at 6, but that describes a possibility, not a likelihood. Plaintiffs offer no evidence of when those petitions will be decided or that USCIS will decide them under the Challenged Rule.

Second, USCIS denied the November 6 petition based primarily on evidentiary deficiencies, finding the GPS did not establish how many miles each truck had driven. Plaintiffs' description of the decision identifies no ruling based on where the revenue was earned. Dkt. Nos. 20 at 4; 20-1 at 7–8. Indeed, the

declarations Plaintiffs submit in support of their TRO request do not mention the "Challenged Rule" at all. *See* Dkt. No. 20-1 at 20, 22. They argue instead that the evidentiary ruling shows USCIS is determined to defeat their projects "by any means." Dkt. No. 20 at 4. But they offer little to support that inference.

Even if they had, Plaintiffs' requested TRO is limited to preventing the Government from adjudicating filings based on a determination that "revenues were generated outside a designated TEA," *id.* at 2, and it would not touch a denial like this one. A restraining order that would not have prevented the harm Plaintiffs point to as the emergency cannot be justified by that harm. *See Perfect 10*, 653 F.3d at 982.

Because Plaintiffs have not shown likely irreparable harm before the court can rule on the preliminary injunction, the Court need not reach the other *Winter* factors.

## 4. CONCLUSION

At bottom, Plaintiffs seek a prompt ruling on their preliminary-injunction motion, which is understandable. But the Government's motion to dismiss raises threshold questions of jurisdiction and standing that bear directly on whether Plaintiffs are likely to succeed. So the Court will hear both motions together. The Court's Courtroom Deputy will contact the parties to schedule the hearing on the pending motions for a preliminary injunction and to dismiss.

Plaintiffs' motion for a TRO is denied. Dkt. No. 20.

Dated this 17th day of November, 2026.



Jamal N. Whitehead
United States District Judge